## UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

Antwan Johnson,

      Plaintiff,                  Court File Number:_____

      v.                         **VERIFIED COMPLAINT**

Public Housing Agency of the City of Saint Paul,

      Defendant.

Plaintiff Johnson, a low-income person, seeks declaratory and emergency injunctive relief enjoining defendant PHA from refusing to reinstate his Section 8 rental assistance under the Section 8 Housing Choice Voucher program. Plaintiff also seeks declaratory and emergency injunctive relief enjoining defendant PHA from terminating his Section 8 rental assistance without affording him the opportunity for a pretermination informal hearing.

Plaintiff Johnson, as and for his claims for relief against defendant PHA, states as follows:

### PARTIES

1. Plaintiff, a single, Black male, is a resident of Ramsey County, State of Minnesota.

2. Plaintiff did not complete high school.

3. Plaintiff suffers from multiple disabilities that include blindness in one eye, a history of brain tumors, bipolar disorder, and anxiety disorder. He wears a patch over his blind eye.

4. Plaintiff began receiving disability income at age eighteen. He worked for a short time and stopped receiving disability payments. He later re-applied for disability income and began receiving it again in 2008.

5. Plaintiff currently receives approximately $814 per month in disability income - $733 in Supplemental Security Income and $81 in Minnesota Supplemental Aid.

6. Defendant PHA is a local government agency which administers a HUD Section 8 Housing Choice Voucher program in Saint Paul, Minnesota.   The PHA is located at 555 Wabasha Street North, Saint Paul, MN 55102.

## JURISDICTION

7. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States, specifically, the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

8. This Court also has jurisdiction pursuant to 28 U.S.C. §§ 1343(a)(3) and (4) because this action arises pursuant to 42 U.S.C. § 1983, which prohibits the deprivation of constitutional rights or rights secured by the laws of the United States by persons acting under the color of state law.

9. The request for declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

10. The request for injunctive relief is authorized by the Federal Rules of Civil Procedure, Rule 65.

11. Plaintiff's claims arise in the State of Minnesota, so venue lies in this District Court pursuant to 28 U.S.C. §1391(b).

## SECTION 8 HOUSING CHOICE VOUCHER PROGRAM

12. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 11.

13. The Housing Choice Voucher (HCV) Program is a federal rental subsidy program administered by the Department of Housing and Urban Development (HUD).  In turn, HUD funds and regulates state or local governmental units known as housing authorities to directly administer the program.

3

14. Defendant, St. Paul PHA, is the housing authority responsible for administering the Housing Choice Voucher program in Saint Paul.

15. HUD pays rental subsidies so eligible low-income families can obtain decent, safe, and sanitary housing.   24 CFR § 982.1.

16. Families who are participants in the program rent privately owned units that meet basic housing quality standards. Voucher program participants may choose a unit that meets program requirements anywhere in the United States where a public housing agency (PHA) administering the tenant-based program has jurisdiction over the area in which it is located. 24 C.F.R. § 982.353.

17. The housing authority inspects a unit and approves the unit and tenancy.  It then enters into a housing assistance payment (HAP) contract with the owner.  The housing authority makes rent subsidy payments on behalf of the family.

18. The rental subsidy is calculated based on a local payment standard which is the maximum subsidy the housing authority will pay for a unit.  The family may choose a unit that rents for less or more than the payment standard. If the rent is less than the payment standard the family pays 30% of its adjusted income for rent.  If the rent is more than the payment standard the family may pay up to 40% of its

adjusted income for rent. 24 C.F.R. § 982.508. The PHA pays the same if the rent is less or more than the payment standard.

19. The family share of rent plus the PHA subsidy payment to the owner may not be more than the total rent to the owner. 24 C.F.R. § 982.451. An owner may not demand or accept this extra "side payment" from the tenant. *Id.*

20. Each PHA shall, not less frequently than annually, conduct a review of the family income. 42 USC § 1437f(o)(5).

21. The PHA must obtain and document third-party verification of reported family income. 24 C.F.R. § 982.516(a)(2).

22. Each PHA must adopt policies prescribing when and under what conditions the family must report a change in family income. 24 C.F.R. § 982.516(d).

23. The PHA must establish procedures that are appropriate and necessary to assure that income data provided by the family is complete and accurate. 24 C.F.R. § 982.516(f).

24. The PHA may terminate program assistance if the family violates fails to report income or makes side payments to the owner. 24 CFR § 982.552(c)(1).

5

25. The PHA must provide the family with the specific grounds of any termination of assistance and afford it an opportunity for an informal hearing to consider whether the termination is in accordance with the law, HUD regulations, and PHA policies. 24 C.F.R. § 982.555(a).

26. At its own expense, the family may be represented by a lawyer or other representative. 24 C.F.R. § 982.555(e)(3). The PHA and the family must be given the opportunity to present evidence and may question any witnesses. 24 C.F.R. § 982.555(e)(5).

27. The person who conducts the hearing must issue a written decision, stating briefly the reasons for the decision. Factual determinations relating to the individual circumstances of the family shall be based on a preponderance of the evidence presented at the hearing. 24 C.F.R. § 982.555(e)(6).

## FACTS

28. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 27.

29. Defendant first issued plaintiff a voucher in 2008. Plaintiff requested an admission preference from Plaintiff because of his disabilities.

30. Defendant has been aware, since 2008, that plaintiff is disabled. Plaintiff's neurologist completed a disability certification to support

6

plaintiff's request for an admission preference. (Exhibit 1). Plaintiff

has reported his disability income to defendant every year since 2008.

31. Around 2008 or 2009 plaintiff applied to the Social Security

Administration's ("SSA's") Ticket to Work ("TTW") program. TTW

allows a disabled person to work in a limited capacity and still

continue to receive some disability income.

32. SSA did not approve plaintiff's eligibility for TTW until late

2015.(Exhibit 10).  Plaintiff was then injured in a car accident in

February 2016. (*Id.*). As a result, Plaintiff was not physically able to

participate in the TTW program.  (*Id.*). Plaintiff continued to receive

and rely solely on disability income.

33. For several years, plaintiff - using his 1-bedroom voucher - and with

defendant's approval, rented a two-bedroom unit.  (*Id.*). Defendant

paid its subsidized portion on a one-bedroom voucher while plaintiff

paid thirty-percent of his income plus the remaining amount of rent.

Plaintiff paid no more than 40% of his income on rent.

34. On or about December 10, 2015, plaintiff applied to rent a two-

bedroom unit from Kaehler Management, LLC. (*Id.*). When Kaehler

Management asked him if he was working, plaintiff responded that he

was planning to but did not yet have a job.  (*Id*.). Plaintiff did not complete the employment section of the rental application. (*Id*.).

35.  Kaehler Management asked plaintiff how he could afford to rent a two-bedroom unit with his one-bedroom voucher. (*Id*.). Plaintiff explained that he typically rents two-bedrooms and pays for the extra rent. (*Id*.).

36. Kaehler Management denied plaintiff's application. (*Id*.). Plaintiff found another two-bedroom unit and in early 2016 he began renting the unit using his Section 8 assistance. (*Id*.).

37.  On March 15, 2016 defendant served plaintiff with a notice of "Termination of Section 8 Assistance." (Exhibit 2). In its notice, defendant alleged, "The PHA has received credible information that you have unreported employment and also that you have offered side payments to a landlord to obtain a rental unit." (*Id*.).

38.  Plaintiff, with the assistance of a friend who is also a Section8 participant, requested an informal hearing to appeal the termination. An informal hearing was held on June 29, 2016. A hearing officer presided over the informal, quasi-judicial proceeding. Defendant was represented by counsel. Plaintiff was unrepresented. The hearing was neither recorded nor transcribed.

39. Shortly before the hearing, defendant mailed plaintiff a packet containing its proposed evidence and exhibits. (Exhibit 3). Plaintiff was still suffering from symptoms related to the car accident at this time. (Exhibit 10). His symptoms included blurry vision, headaches, and neck and back pain. (*Id.*). Plaintiff did not look through the packet before the hearing. (*Id.*). Plaintiff did not ask for a continuance of the informal hearing, nor was he aware whether such a request could be made or if it could be granted.  (*Id.*).

40.  At the hearing, defendant offered exhibits including a Kaehler Management rental application. (Exhibit 4). The hearing officer admitted all of defendant's exhibits.

41. Defendant called Deb Kaehler, Property Manager with Kaehler Management, to testify. Ms. Kaehler testified that plaintiff provided the information on the rental application.  Ms. Kaehler did not claim to have actual knowledge of any facts relating to plaintiff's alleged employment.

42. The employment section of the rental application lists "September 2015" as hire date; "Demolition work" for position; "Temp Service" for Current Employer; "$20.00 per hour, 30 average per week" for

9

monthly salary or hourly rate; and "Clint" for supervisor's name. (*Id*.). No employer name, address, or phone number are listed. (*Id.*).

43. Defendant introduced no other evidence to prove that plaintiff was earning unreported employment income.

44. Defendant offered no third-party verification of plaintiff's employment.

45. Defendant did not claim that plaintiff's share of the rent should have increased or that plaintiff owed defendant any sum based on a retroactive adjustment of his rent based on new income.

46. Plaintiff testified that he did not offer side payments to Kaehler Management and that he tried to explain to them that defendant allows him to pay the extra rent on a two-bedroom unit and that he had done this for years with defendant's knowledge and permission. (Exhibit 10).

47. Ms. Kaehler testified that she thought plaintiff was offering an illegal side payment and that she was unaware that the Section 8 program allows plaintiff to pay up to 40% of his income on rent. (Exhibit 5).

48. Plaintiff testified that he has disabilities and is unable to work. (Exhibit 10). He testified that he is blind in one eye and that he started receiving disability income when he became eighteen. (*Id*.). Plaintiff

also explained that he underwent surgery to remove brain tumors in 2012. (*Id.*). Plaintiff attempted to show the hearing officer images of his brain. (*Id.*). The hearing officer did not look at the images or accept them into the record. (*Id.*).

49. Plaintiff testified that he was accepted into the TTW program and was hoping to start working once he moved into the Kaehler Management unit. (*Id.*). Plaintiff showed the hearing officer a letter from SSA's TTW program. (Exhibits 9 and 10). The hearing officer did not look at the letter or accept it into the record. (Exhibit 10).

50. Plaintiff testified that he did not start working through the TTW Program because he was involved in a car accident in February 2016 and began suffering from blurry vision, headaches, and neck and back pain. (*Id.*). Plaintiff testified he was experiencing this pain at the hearing. (*Id.*).

51. Plaintiff invited defendant and the hearing officer to request information from SSA to verify his claim that he was not working. (*Id.*). Neither the hearing officer nor defendant sought this information. (*Id.*). Plaintiff was not informed of how to make a proffer of this evidence. (*Id.*).

52.  The hearing officer issued a decision on July 13, 2016, that upheld defendant's termination of plaintiff's assistance. (Exhibit 5). The hearing officer found that plaintiff did not intentionally offer to make illegal side payments to Kaehler Management but that he did earn employment income that he failed to report to defendant.  (*Id.*).

53. In deciding that plaintiff did not intentionally offer side payments, the hearing officer reasoned that plaintiff was not able to understand the distinction between the Section 8 rule that allows him to pay extra on rent up to 40% of his income and a side payment that the Program does not allow. (*Id.*). The hearing officer concluded that plaintiff's head injuries were the "plausible" cause of his confusion. (*Id.*).

54. In finding that plaintiff earned unreported employment income, the hearing officer reasoned that plaintiff likely had a job because he paid extra on a two-bedroom unit and because a start date, average number of hours worked per week, and a supervisor's name were listed on the rental application. (*Id.*).

55. The hearing officer did not consider all of the relevant evidence in her decision. Specifically, she did not consider plaintiff's testimony that he is disabled and unable to work and that he was planning to participate in the Ticket to Work Program until he sustained injuries

12

in a car accident.  She did not allow plaintiff to submit documentation from SSA or the images of his brain.

56.  Plaintiff retained counsel after receiving the hearing officer's decision. On August 11, 2016, plaintiff, through his counsel and in the form of a letter, requested defendant to reinstate his assistance. (Exhibit 6).

57.  In his reconsideration request, plaintiff argued that defendant failed to show by a preponderance of the evidence that he was employed. (*Id.*). Plaintiff pointed out that key information including employer name, phone number, and address were omitted on the rental application.  (*Id.*).

58. Plaintiff enclosed with his reconsideration request a statement from an SSA representative on an official SSA form: "We searched for evidence of wages earned by this NH ["Number Holder" or Wage Earner] after 2013 using all means at our disposal. We found no evidence of earnings since 2013. * - MAXIS, Equifax, SS records." (*Id.*).

59.  On August 24, 2016, defendant, through its counsel, responded to plaintiff's reconsideration request in the form of its own letter.

13

(Exhibit 7). Defended denied plaintiff's request. (*Id.*).  Defendant responded that it had met its evidentiary burden. (*Id.*).

60. Defendant acknowledged that it readily presumed, solely from Kaehler Management's statements and the rental application, that plaintiff was violating program rules: "The PHA only learned of Mr. Johnson's unreported income after the prospective landlords forwarded the rental application that Mr. Johnson himself prepared and submitted. Third party verification was irrelevant and unnecessary at that point because the program violation already occurred."  (*Id.*).

61. Defendant refused to consider the third-party verification that plaintiff provided and deemed it to have "no bearing on the termination decision in this case." (*Id.*).

62. Defendant ceased subsidy payments on the HAP contract between it and plaintiff's current landlord July 31, 2016. On August 1st plaintiff became responsible for the entire portion of the rent. Plaintiff does not have enough income to afford rent.  Plaintiff receives $814 per month in disability income. Plaintiff's rent is $825. He is disabled and has no meaningful employment opportunities. Plaintiff is in imminent risk of eviction and homelessness.

14

## CAUSE OF ACTION – VIOLATIONS OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT

63. Plaintiff re-alleges and incorporates herein by reference paragraphs 1 through 62.

64. Plaintiff states a claim for relief for defendant's violations of the Due Process Clause of the Fourteenth Amendment to the United States Constitution, which is actionable pursuant to 42 USC § 1983.

65. Plaintiff has a property right in his participation in the Voucher Program.

66.  Defendant is a "person" under 42 USC § 1983.

67. Defendant acted "under color" of state law, under 42 USC § 1983.

68. Defendant terminated plaintiff's participation in the Voucher Program in violation of rights secured to plaintiff by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

## FIRST VIOLATION

69.  Plaintiff re-alleges and incorporates herein by reference paragraphs 1 through 68.

70. Defendant violated plaintiff's procedural due process rights by terminating his voucher assistance without establishing by a preponderance of the evidence that plaintiff had employment income.

71. Plaintiff has suffered and will continue to suffer irreparable harm by defendant's action and is entitled to injunctive and declaratory relief and monetary damages.

**SECOND VIOLATION**

72. Plaintiff re-alleges and incorporates herein by reference paragraphs 1 through 71.

73. Defendant's hearing officer violated plaintiff's procedural due process rights by failing to accept plaintiff's evidence that he intended to offer at the informal hearing.

74. Defendant's hearing officer violated plaintiff's procedural due process rights by failing to assist him in presenting relevant evidence he attempted to offer at the informal hearing.

75. Defendant's hearing officer denied plaintiff, who is disabled and representing himself, the opportunity to be heard in a meaningful manner.

**REQUEST FOR RELIEF**

WHEREFORE, plaintiff Antwan Johnson requests relief as follows:

A. That the Court assume jurisdiction over this cause of action;

B. That the Court issue emergency relief and a permanent injunction enjoining defendant PHA from refusing to reinstate his Section 8 rental assistance and from terminating his Section 8 rental assistance without establishing by a preponderance that he had employment, without affording him the opportunity to present relevant evidence, and without assisting him in presenting relevant evidence and otherwise depriving him of due process of law;

C. That plaintiff be awarded compensatory damages;

D. That plaintiff be awarded reasonable attorney fees; and

E. That the Court award such other relief as appears appropriate and just under the circumstances.

Dated:  9/14/16__               **SOUTHERN MINNESOTA REGIONAL**
                                       **LEGAL SERVICES**


                             By:_____s/Heather Meyers
                                    Heather Meyers (Atty. Reg. #0390061)
                                         55 E. 5th Street, Suite 400
                                         Saint Paul, MN 55101
                                         (651) 894-6919
                                         FAX (651) 297-6457
                                         Heather.meyers@smrls.org

17

Charles Thomas (Atty. Reg. #109058)
55 E. 5th Street, Suite 400
Saint Paul, MN 55101
(651) 222-5863
FAX (651) 297-6457
charles.thomas@smrls.org

18

# VERIFICATION

STATE OF MINNESOTA    )
                                         ) ss.
COUNTY OF Ramsey         )

Antwan Johnson, being first duly sworn upon oath, deposes and states that he is the plaintiff in the above action, and that he has read the foregoing complaint and knows the contents thereof and that the same is true to his knowledge, except as to those matters therein stated on information and belief, and as to those matters he believes them to be true.


          s/Antwan Johnson
          Antwan Johnson



Sworn to and subscribed before me this

12th day of September, 2016

s/Bobbie Ann Asubonteng
Notary Public